May it please the court, Devin Burstein on behalf of Mr. Gomez. As Judge Kaczynski wrote in Kajayan, closing argument matters, statements from the prosecutor matter a great deal. Here, during the closing argument, the statement, the key statement from the prosecutor to the jury was that Mr. Gomez's defense was factually impossible. It could not have happened the way Mr. Gomez said it did because there was a fence blocking the lane so the woman with the groceries could never have come to his car and put the groceries in his car and so he must have known about the methamphetamine because there could have never been this woman. But that statement that matters a great deal was factually inaccurate. That is. How do we know that? We know that from the pictures and from the statement. Talk me through it. Absolutely, Your Honor. In particular, I want to know if Exhibit 1A was also shown to the jury. 1A was admitted to evidence and shown to the jury. The ones shown during closing are at 222 of the record and 223 of the record. I'm sorry. That were shown to the jury? During the closing. During the closing. All of these were admitted to evidence, right? Yes, Your Honor. And they were available for? Yes, Your Honor. So what was actually shown during closing? 222, ER 222 and ER 223. Tachymed Exhibits 1C and 1F. Yes, that's my understanding. And how do we know this? We know that from the new trial motion that was submitted. And so those are the exhibits to the new trial motion. The prosecutor never said during closing argument, I am now showing the jury. That's what I'm wondering. There's nothing on the record there to say, to tell us what it is that he was showing. And there was a new trial motion where a defendant claims this is what happened. And never disputed by the government. I mean, and I don't think they're going to dispute it right now. So we know from the new trial motion and everybody's general understanding who was there at the time, that this is what was shown. 1F and 1C. And no matter what else was shown, this is the argument that's made. It's that, look, there's a big fence right there. So that couldn't have been happened. So, I mean, that's how we know. So that was shown during the, I mean, I will ask the government to concede that. Right. Okay. So that's what's shown. And then we, if we walk, continuing to walk through the exhibits, then we go to 225. ER 225. So that's the, from the new trial motion. And this was introduced in a trial? No, this wasn't introduced at trial. And really, that's the whole point. Because the government, it's not like they called a witness or an expert during the trial and said, look, there's a fence here. It couldn't have happened. Can I ask a yes or no question? No. Okay. Okay. Okay. So if it wasn't introduced at trial, I mean, it's one thing to say, look, the prosecutor makes an argument that's contrary to evidence at trial. But if there's no evidence at trial to refer to, how is this a misstatement? Why isn't the prosecutor entitled to use the evidence that was presented and ask the jury to draw inferences? So how do we know that these 1F and 1C are not in fact the locations that Mr., that your client, Gomez, referred to in his statement? So we know from his statement that was admitted at trial. So we know from his statement that he says, the first bridge coming from the Zona Rio is when I saw the woman. Then at the last bridge, closest to the border, is when I run into the mysterious man. So that's how we know from the evidence. Then- How do we know that 2, 1C and 1F are not exactly those locations? Well, we know we can look at the Google Earth image and we can see- Which is the Google Earth image? ER 225. Well, again, but that you have to refer to something that's not in the record. From looking at the evidence at trial, you agree with me that lawyers are entitled to use evidence. And they can't make misstatements, they can't refer to a statement of a witness at trial and say the witness said X when the witness said Y or not X. But, and they can't say something that contradicts evidence at trial. But how do we know that, assuming that 1C and 1F are in fact the things that were referred to, that those were not exactly the locations that Mr. Gomes talked about in his statement? We know it absolutely. I mean, we know it absolutely. How do we know it based on the evidence at trial? We don't, we don't know it based on the evidence at trial. But that's the, I think your honor is really keying in on one of the big problems with this statement. This statement is not something that was, this was saved for closing argument. There was no, the government never made the point or called a witness to say, look, there's a fence. You've heard the statement from Mr. Gomez, agent so and so, is there a fence there? The fence lawyer didn't get up and say, hey, this is not where my client testified. Right, exactly. He didn't get up in rebuttal in his closing statement and say, you know, you've been shown these pictures. But look, see the bridge over here in picture 1F, that's the first bridge there. And so he must have been further back or something. There was nothing like that. Exactly. There was nothing like that because this is not something that had come up at trial. The government had never disputed that, the factual possibility of this happening. It was saved for closing. The fence lawyer would have had to have a Google image in his mind to, I think, in the Mahano. Not so much. I mean, his client testifies, or he relies on a statement from his client that says, woman came across the bridge, came across, traffic was stopped, she came across. There's a grocery store. And the prosecutor puts up these pictures that show, assuming these are, in fact, the pictures, that show a fence to show that's impossible. But you don't need Google Maps to realize that there is an inconsistency there. That's true, Your Honor. I'm sorry. Isn't the problem that what the prosecutor argued was simply false? That, right. That's the problem. And I don't know if it was deliberately false or innocently false, or I don't know if that even makes a difference, but it was false. It doesn't make a difference under this court's case. Well, you agree that it was false, but you haven't persuaded me it was false. Well, how do we know it's false? Your Honor, you're asking me two different questions. You're asking, one question is, do you know it's false in reality? And you're asking, do we know it's false based on the evidence admitted at trial? Generally, what we do here, when we ask lawyers questions, is we ask them on the record. We ask Mr. Trevino a question, and he says, well, it's not in the record, and here's my speculation about it. Fair enough, Your Honor, but this is not speculation. But you do agree that there's nothing in the record to show, assuming these are the pictures, that this, in fact, is not the place that your client said was a place where he picked up the weapon? No, Your Honor, I disagree. Your Honor is deciding to draw the record at the close of the trial. The new trial motion is part of the record, and it's specifically the purpose of Rule 33. It says the interests of justice. You know, let me interject here. I think I can help you a little bit, even without getting to the new trial motion. I'm now looking at the testimony from the agent who's asked, if you're standing within the United States, sort of at the border there, in the lanes of traffic, can you see the bridges, plural, the bridges that are within Mexico? Yes, sir. That being the first bridge, he's now pointing to the exhibit. Yes. Well, we know from the statement of your client that this happened, at least as he recounts it, at the first bridge coming from Zona Rio. Correct. Which means to say it's not going to be the last bridge as you get to the border. Exactly. And this is all in the trial record. That's true. So the question, that being the first bridge from the prosecutor, strikes me as at least an odd way to ask the question, that being the first bridge from where you're doing, and he doesn't follow up with a question, but is that the bridge that would be the first bridge coming from the Zona Rio?  So that just sits there. Right, Your Honor. And then, in a closing argument, the prosecutor says, well, we talked about the first, he talked about the first bridge, well, let me show you a picture of the first bridge. Right. And I did all of that without talking about the motion for a new trial. Well, I think, Your Honor. I know you agree, but I didn't follow it at all, so why don't you explain it to me? Okay. Okay, now you tell me. Fair enough, Your Honor. So let's not look at the new trial motion, because when we talk about the record, we're talking about what's before the jury and the prosecutor. So let's see whether this argument that just was, why don't you tell me? Yes, Your Honor. So the idea being that the statement from the agent is that, yes, there are multiple bridges. Okay, where is that statement? I don't have it. ER 23. Do you have ER 23? Yes, Your Honor, of course. All right, let's look at it together. Yeah. Line five through seven. I'm sorry, what line? Line five through seven. Five through seven. The plural's on line seven. Okay, go ahead, I'm looking at it. Okay. Okay, if you're standing within the United States, sort of at the border there in the lanes of traffic, can you see the bridges that are within Mexico? Yes, sir. And then showing in 1E, that being the first bridge, so that- I'm sorry, where is, you say showing 1E? Right, line two. I'm sorry, where does it refer to? Line two. Line two. Line two is a reference to 1E. Okay, and where is 1E? Perhaps the easiest place to find 1E would be in the government's supplemental excerpts of records, so that would be on their page five. Which is, I know, easier for me on the iPad. Oh, you don't have the real thing, huh? Well, I have it. I'm sorry? It's in page five of the government's supplemental excerpts of record. I don't have that. Is it supplemental excerpts of records? Praise the Honor. I have a supplemental citation. Yes, that was to the Maheno case. I'm happy to pass it up. I don't look at that page. Oh, sorry, Your Honor. I think that's it. Oh, yes. Oh, this is, I thought this was a brief. Okay, got it. Okay. Right. Five, okay. So he's looking at 1F and he's saying what? That's the first bridge closest to the border. That's the bridge with the fence. That's not the bridge. That can't be the bridge. That's the bridge shown to the jury at closing. That's the bridge from which the statement is made. But that can't be the bridge that Mr. Gomez is talking about. Because he says the first bridge from the zone of Rio coming from Mexico is where he saw the lady. And the last bridge where he saw the man is the one closest to the border. This is the last bridge. This is the bridge with the fence. This is the bridge that was shown during closing argument. There's never a- There's something on page 23 that says all of that? Yes, essentially. I'm sorry, this is identifying this bridge as being the bridge closest to the border. Yes, your honor. Okay. Okay, so this is, so what you're saying, this is the same bridge as the bridge in 1F? Yes, your honor. How do we know that? Well, we can- ER 22. ER 22 just follows up with different pictures of the same as they're going through the different pictures with the agent. And I think Judge Fletcher's explanation was better than mine, but I hope that that- No, I'm sorry, I don't understand. It's just- Okay, I'll- You can tell me on page 22. Okay, your honor. I need to get back to that briefly. Okay. So then we continue, and government moves to admit 1C, D, and F. Where are you reading from? I'm sorry, your honor. At line 3 and 4 of ER 22. Okay, 1C, D, and F. E and F, right? Yes, and then as we go down, they're all pictures, essentially pictures. And if you look in the supplemental excerpts of record, you can see that they're all pictures of basically the same thing, just different views. Okay. And that's how we would know, your honor. Well, how do we know the same bridge that was shown to the jury during closing argument? Well, again, your honor, he's saying looking at these pictures, there's a big fence there. The prosecutor doesn't identify it, but- Well, you stood up there and said what he was showing is 1C and 1F. Right, attached to the new trial motion. And the government's going to concede that. They're not going to come up here and say that's not the, we didn't show them pictures of the fence, of the bridge closest to the border. It's not, that's not a fact in dispute. I mean, otherwise, your honor, his statement would make no sense. Look, there's a fence, fence, fence. If he's not showing a picture of a fence, why is he saying there's a fence, fence, fence, huge fence? Let me just be more specific with the question. Bridges often look alike. What I'm wondering is how do we know that the bridges on two exhibits that you claim were, were shown during closing argument are the same bridges as identified here in 1, on page 23? Because, your honor, those are the pictures that were admitted into evidence. He couldn't be showing some pictures that weren't. Well, here, specifically, reference is 1E. Right? And we've identified, you know, this is what's on page 23, reference is 1E. Okay? Now, the question is, is this the same bridge that appears in the two pictures that you said were shown to the jury during closing argument? Your honor, just before we keep going, I think I can answer your question from page 22 itself. So he goes to 1, starting briefly with 1D, is that the booth you were assigned to that day? Yes. 1C, just so everyone can see this, we have a fence here. Is that the fence that's adjacent to the lane that you were assigned in that day? Yes, sir. Now he goes, just a different vantage point is F. He, the prosecutor, says it. And then during closing argument, he refers to fence, fence, fence. He's not, no, Mr. Hayman, he's not going to come up here and, and mislead the court. He's going to come up and say. I'm sorry, but the next page is where he refers to E. Right. Again, there's a fence there, yes. And this bridge that we see there, that's. But how do we know this is the same fence as the fence in F, D, and C, which he identifies in the earlier page? Your honor, they're just a series of pictures of the identical location. I mean, reading it in context, it's 100 percent clear. And I don't think Mr. Hayman or the government would ever suggest anything to the contrary, because that would be plainly misleading. Nevertheless, I need to understand. I understand. And I am just wondering, how do we know the thing he talks about on page 23, where he says this is the bridge close to the border, is the same bridge as shown in, I'm sorry, you said C, D, and F, and E? Yes. Though not all the bridge, some of them are just the fence. They don't have a bridge at all. Right. Because it's, they're different vantage points, different close-ups of the same basic location, with the fence. And I have trouble seeing a bridge at all in C. Right. Because they're different vantage points of the same, they're different. It's like if I took a picture of Your Honors on the bench, and I focused one way, and then I did a close-up of Your Honor, and Judge Wardlaw wavered, she wouldn't be in the picture. But nevertheless, it's the same area. I mean, just because. How do I know? Your Honor, I would ask you to first read that part in context. They don't look to me like the same place. I mean, look at D and E. Do you have D and E? Yes, Your Honor. OK, look at them. They look like very different places to me. They look like nothing anywhere near each other. Yeah, well, I believe D is facing the other direction. OK, so I mean, that's what you're telling me, but I don't know that. Because these are all the pictures coming from the lanes, which is where the agent was situated, which is what he says in his testimony on page 22 and 23, and which is really not in dispute. And what is also, more importantly, not in dispute, I believe, Your Honor, is that we know we can, I mean, this court has often taken judicial notice of Google Earth. And we know from those images that there's a fence at one bridge. The bridge closest to the border. There's not a fence at the bridge farthest from the border, the first bridge from the Zona Rio. And how do we know that? We know it from the Google Earth images. Which are not in the record. They are in the record from the new trial motion. And the new trial motion is about what's in the interests of justice. And let's look at it from Mr. Gomez's point of view. He's not guaranteed a perfect trial, but he's guaranteed a fair one. How can you have a fair trial? How can you ask the jury to evaluate your defense if the prosecutor, the person has, as Your Honor noted in Rangel-Guzman, that the jury is naturally inclined to believe? If the prosecutor is standing up with a picture and saying, your defense is factually impossible, what other option is there than guilty? I'm not asking for anything other- Sotomayor, for your lawyers to stand up and say the prosecutor has just told you a bunch of bull. Let me show you why the thing the prosecutor said is wrong. And you should not quit my client for the very reasons the prosecutor gave. But Mr. Gomez's lawyer is not the one who, as a first offender, was sentenced to 121 months. It's whether it's in the interest of justice- You have an IAC claim here? No, Your Honor. The point is that it's Mr. Gomez's interest of justice. He just wants an opportunity to present his case to the jury without false misinformation about his story. I'm not calling that saying – I was careful not to use the word misconduct. I think this was a prosecutorial error. I think he shouldn't have saved it for a closing argument, that's for sure. But I'm not saying it's intentionally- When is he going to raise it? I mean, are you there? Call an agent. Sir, you've heard the testimony. You were – you interrogated Mr. Gomez. You heard him say at the first bridge, is there a fence there? Well, no. Is there a fence somewhere else? Yes. Where is that? The bridge closest to the border. And then it's right for a closing argument. I mean, this is something that didn't get raised until closing argument. It was saved for closing argument. But we know, stepping back, we know that in the physical universe, this is a false statement, and we just want in the interest of justice- You agree that this case is different from – from Magano, right? Right. Because in that case, the prosecutor misstated the testimony of a witness. You could look on the record, the witness said X, the prosecutor said Y, right? Well, as Your Honor pointed out, I mean, every circumstance is different. But I think the- There was – the government concedes a misstatement here. Right. As to the stop sign. As to – at least as to the stop sign. The stop sign they do, yes. But I think that the similarities dwarf the differences. It's the same principle. It's that when you're – in Magano- But you didn't answer my question. I said, yes, I agree it's a different circumstance. It is different. But I think the similarities dwarf the differences. And I think that the overriding similarities are what's important. And, Your Honor, Magano was one thing, but I think it's also, you know, Your Honor's case in Kajian has the same kinds of similarities. And Judge Wardlaw's published opinion, published order from Maloney. The problem is that what the prosecutor says matters a great deal. And that's Your Honor's point. And here it was wrong as a matter of fact. It's factually wrong. Mr. Gomez, the defendant- Before we hear from the government, let's see whether they think it's wrong. Thank you. Good morning. May it please the Court. Michael Heyman on behalf of the United States. Your Honor, since a pictorial understanding of the port of entry is so important here, I do have a blow-up, if Your Honor would give me permission to show the blow-up to explain the various pictures and to establish that there were no actual false statements made during closing argument. Can I ask you something? So do you concede that 1C and 1F were the ones that the prosecutor showed to the jury? During closing argument, Your Honor? During the rebuttal closing argument. Yes, Your Honor. And I was the prosecutor at trial. You concede that. I do agree that those were shown to the jury as well as I'm-although it's not specifically stated in the closing argument. Just to make sure you understand the question. I think what Judge Wardle is asking is are you conceding that those were the pictures that the prosecutor referred to during his closing? Yes, I did refer to- I think all of these were shown to the jury, right, because these are all in evidence. Yes. But you are agreeing that the CNF were the ones referenced, that you referenced in your summation? Yes, Your Honor, as well as 1A. So what I'm having trouble understanding about this case is, and since it was you, was there some discrepancy as to which bridge? I mean, Gomez clearly said it was the first bridge out of his region, yet you showed pictures that were the last bridge from the region. What's the reason for doing that? The reason is twofold, Your Honor. I'll refer, Your Honor, first to Supplemental ER, page 14, which is the defendant's post-arrest statement where he describes the series of events. And then we'll look at that in conjunction with Supplemental Ex Super Record 1A. Okay? Let me find the statements. So 114 and 1. Okay. Okay? Okay. So looking at 14, he says, now that I was coming from- What page? Are we talking about 206, or? The Supplemental ER, page 14. Oh. Page 55 of 61. 14 has sort of two columns. Correct. It's the English column on the right, the translation. One of them is English. I see. Okay. Got it. Go ahead. So if we look just a couple of lines down, it says FKG, which is the defendant. He says, now that I was coming from my home, from my house. And here's the next key phrase, which answers Your Honor's question. He creates a point of reference. He says, precisely here at the border. What he's doing is, remember, Your Honor, we have a defendant that's sitting at the San Ysidro Port of Entry, sort of looking south, and he starts his point of reference and says, precisely here at the border. And then he starts talking about the first bridge coming from the zone of Rio. And that's when we get to Supplemental Excerpt of Record 1A. For a second, you missed some stuff. I mean, he says, here at the border, which obviously, I mean, we don't know what the extent to. And then he says, the first bridge, next line. And then he said, I arrived before the bridge, the first bridge. He says that again. And a lady was going to cross. And in fact, a lady could cross at the first bridge, right? No, Your Honor. How do we know that? Here's the reason, Your Honor. And it's going to come down to. I asked you, how do you know that? Because we don't have an evidence of picture of the first bridge. We do have evidence of the first bridge. And that's the first bridge based on the point of reference that the defendant gave us. No. The first bridge coming from the zone of Rio. How do we know that? Your Honor, I. First of all, if you look at ER page 23, at the bottom, look at Exhibit 1A, and there is no picture of the first bridge. No, sir. No breaks in any of the bridges, in the fence under the bridges. Now, what's Exhibit 1A? Show me a picture of 1A. I can't see it. Where is it in the materials that I have? It's the Supplemental Excerpt for Record 1. Might you hand that to the clerk, sir? I'd like to see it. Because I don't have it in my materials. The blow-up, Your Honor? You have a blow-up of 1A? I do, Your Honor. Okay, you can show it to me. I mean, I don't know. Yeah, absolutely, sure. Have you shown it to opposing counsel? I have, Your Honor. Do you agree it's 1A? Yes, Your Honor. Okay. Oops. I can see you have a law degree rather than a mechanical engineering degree. So this is the evidence that was presented to the jury, admitted as Exhibit 1A. The San Ysidro Port of Entry is here. The international border is about right here. And we have a defendant giving a post-arrest statement here. And he's saying, precisely here at the border, the first bridge coming from the Zona Rio, which is over in this area here, the Zona Rio. There is testimony about that. And the reason Your Honor is asking about that language about from the Zona Rio is there are two ways to come into the San Ysidro Port of Entry. One is not from the Zona Rio. The other is from the Zona Rio. So he's saying the first bridge coming from this direction, which is why we were under the assumption that this indeed was the first bridge that the defendant was referring to. Are there bridges closer to the Zona Rio? There are bridges here, here, and it appears as though there's another bridge up here. Okay. So that's the bridge he was talking about, clearly. Well, Your Honor, first of all, the prosecution argued to the jury, which the jury accepted, is it was a completely fabricated story. Well, I understand that, but you're not answering my question. The one back there that's barely in that picture is the first bridge when you're coming from the Zona Rio, right? That's unclear. There's no testimony as to this bridge or any other bridges. What the defense in the new trial motion has said is that it's actually this bridge and then has provided pictures of that, that were not in the trial record. But again, not only to accept that, you have to disregard the statement by the defendant that his point of reference is precisely here at the border, as he's looking south to the first bridge. And then we have the agent testifying that there are no breaks in the fence. And he showed, we look at Supplemental Excerpt of Record 1C, we have the fence that's being described by the very first primary officer, and that's where his lane is, is right there by the fence. And then he says that fence extends all the way to the bridges, through the bridges, and there's no place to cross. I'm sorry, where are you reading from? The Supplemental Excerpt of Record 1C, in conjunction with ER 23, which is the testimony from the primary officer. Where does he say there are fences all the way down? Prior to the construction, looking at 1A, I'm on the bottom of the page. Page line. I'm on the bottom of page 23, line 23. Page 23, line 23? Correct, Your Honor. Prior to the construction, looking at Exhibit 1A, are there any breaks in that fence that go underneath the bridges? Answer, no, sir. Now, is that right? That is to say, you are showing, it's kind of the fade into the background of the picture. All right. Is it correct? And you're pointing pictures, you're pointing bridges way back in. So up in the upper left-hand corner. Was he testifying that the fence goes all the way back that far? He didn't specify, Your Honor, because this bridge, the one way up here, was never discussed, which is a problem, which is why we always use this as the point of reference. And we started counting one and so on and so forth. But what he was really, I think, describing was all the way to here. But you're not sure. But I think, but I'm not sure, and you may be able to inform me, as you go past that bridge where you pointed and you said here, the one bridge you can see very clearly here, is there a fence past there as you go further into Mexico? There is no evidence in the record to say one way or another, but I will concede that the defendant's motion for a new trial purports to show pictures of this area, and there is no fence. Yeah, okay. So the real question for me is, what does he mean in his statement when he says, well, what happened is that when I was coming here now, now that I was coming from my house, precisely here at the border, at the first bridge, when you're coming from the Zona Ria, I arrived before the bridge, the first bridge, and while the line was moving slowly, the question is, what bridge is he talking about? Is it the first bridge from the Zona Ria, or is it the first bridge back from the border? That's the question. No doubt that there was an ambiguity there. And in fact, during closing argument, at one point I actually said, on ER 163, at the very bottom, on line 25, I said, well, I think this is the first bridge that he was referring to. And I pointed to the one up here. Well, if that's so, he can't have meant the first bridge back from the border. That's correct. But if that's so, there are further bridges, as you've already told me, that are back further, that are bridges coming from the Zona Ria. I agree with that, Your Honor. But then you can't have it both ways, because you say, I think that's the bridge he's referring to, and you're not pointing to the first bridge back from the border. And the reason is, because then I refer to the defendant's statement, which is precisely here at the border. He provides us the frame of reference. So even though my personal opinion was— Wait a minute. Why do you say precisely here at the border in your argument? Then I referred to it. Where's that? I've got your argument here in front of me. Okay. Your Honor, I don't see that. I don't see it either. But what was shown was the—I think the reason it's not in the record is because we replayed the post-arrest statement, which is then not transcribed. I replayed the entirety of—well, the excerpt from the post-arrest statement, which is where he says precisely here at the border. Yeah, so? Well, you asked where it was in the record. Well, no, you said that you said in your argument precisely here at the border, but now you're saying you replayed the tape. I'm sorry. I meant through the tape, yes, Your Honor. Okay. But if you already in front of the jury pointed to a bridge that is not the first bridge back from the border, saying, I think this is the bridge he's referring to, you've already construed that as not meaning the first bridge back from the border, but the first bridge coming from the zoneria, but you've also told me that there are other bridges earlier on coming from the zoneria. You know, Your Honor, what I've done— I get it. I think, Your Honor, what I've done is I've conceded that there is some ambiguity in what the defendant was saying about which bridge. And as the judge in the motion for new trial said, you know, this is somewhat confusing, but at the end of the day, when you look at what the defendant said, specifically about the point of reference, it was a reasonable inference to say that notwithstanding all the ambiguities here, that this is where he said this all took place at the first bridge. But I also want to point out— First bridge. But if you really talk—if you take seriously first bridge from the zoneria, meaning coming from the zoneria rather than first bridge back from the border, you pointed to the wrong bridge. I disagree, Your Honor, because the first bridge— You already told me that there are further bridges back into Mexico coming from the zoneria. Correct. Yes. So? But the first bridge coming from the riozono is simply to tell us which set of lanes he's coming from, which area of Mexico he's coming from. It's not meant to refer to a specific bridge, necessarily. It's just a direction. And it was as if I was saying we have the entrance to the main circuit courts over here, and then we have a hallway over here, and I talk about the first bench coming from the entrance, I could be talking about this one right here because I'm talking about the entrance versus the other courtrooms. It doesn't necessarily mean I'm referring to the bench all the way in the back. But you've already conceded, even in your argument to the jury, that when he talks about the first bridge coming from the zoneria, he's not talking about the first bridge counting back from the border. Is that right? Because you're pointing to the second bridge back from the border. What I conceded, Your Honor, was that I agreed that there was ambiguity in what the defendant was saying. But nonetheless, we have to take into consideration specifically the point of reference that he gave us. Well, this is what bothers me. So you pointed at the second bridge, and then you talked about the fence. But the second bridge doesn't have that fence, right? I'll first start by saying that, based on the... Can't you say yes or no first? Well, because we don't know, Your Honor. You don't know that there's no fence there? I mean, the Google map shows there's no fence there. Those are unauthenticated, but I will assume, for argument's sake, that they are accurate. You could be wrong, but I mean... Yes. Okay. But you don't know? Correct. But what I'm saying is, right now you're telling us that what you meant was that bridge, and the argument in the new trial motion with the Google map attached is that that bridge doesn't have fences. But you pointed at that bridge, and then you said, fence, fence, fence, fence, fence, fence. But there was no fence at that bridge. When you say that bridge, you're talking about... The one... No, I'm talking about the one you were... Okay, the next one. There is, according to the Google maps photo, a fence all the way up to the bridge, and then it appears to stop somewhere right about the bridge. And then it's then, there are then these big concrete barriers that continue. And then you also attributed to the defendant that there was a stop sign, and then you said, but there wasn't. See, look, where? We're referring here to the first bridge. Okay, that bridge. Yes. Okay, so I don't know. So I understand the argument you were making, reasonable inferences from the record. So what if the inference that you draw from the record is, in fact, false? The inference that this is the first bridge, and that that's... That's the bridge that he was talking about. Okay. What if that's, in fact, a false inference? Assuming that that is a false inference, and that he was really talking about this bridge up here where the Google maps show, the argument that I made in the motion for a new trial, which it doesn't really matter, because this story is equally implausible. Because at that bridge, and if we look at the excerpts of record in the motion for a of the excerpt of record, Your Honor, what that purports to show is where the fence ends. And I made the argument that, based on that, we have massive concrete barriers, a three-lane highway that the individual, that this woman, apparently, that the defendant talked about, would have had to carry 40 pounds of narcotics. So does that go to your prejudice argument? It does. But I was trying to answer Your Honor's question. What I'm saying is, does the prosecutor have a duty not to draw and argue inferences from the record that are, in fact, false? Yes. In this case, if, in fact, it was false, you would then go on to argue that your argument that the whole thing was implausible. And so the evidence outweighs your harmless thing. And those arguments were all laid out to the judge in connection with the motion for a new trial. And the judge said... I guess what I'm pondering is that you can draw all sorts of inferences from things, but isn't the prosecutor confined to drawing inferences that are actually truthful? I totally agree, Your Honor. But based on the record at the time, all of that was totally truthful. If you look at the Officer Vasquez's testimony, that the fences went all the way back to even the last fence. You look at where we thought... All the way back to where? Well, when I say last, the third fence that the defendant has said is the last fence. Bridge, you mean, not fence. My apologies. Bridge. The fences went all the way under the last bridge. The last bridge of the ones you showed me, or the ones that are out of sight that you say are still the bridges coming from the Zona Rio? The ones I've showed you. But there are the bridges still coming from the Zona Rio. I believe so. And the only reason I say that, though, is just looking at the picture. There was no testimony about that. But... Let me ask you... 1A was in the record, right? Correct. And the first bridge, as viewed from the point of view of the point of entry, is sort of this archy looking thing. Correct. It's a pedestrian bridge. And I was trying to nail down with supposing counsel whether that is the same bridge as shown in... Um, what are the two exhibits that you referenced in your closing argument? 1C and 1F? Let's look at 1F. Yes, Your Honor. Is that bridge in... And this is what I was trying to figure out with opposing counsel. Is that bridge that you see in 1F behind the cars the same bridge... Or do you concede it is, or do you... It is. Yes, Your Honor. The same bridge as which? That is, in fact... 1A. That is, in fact, the same bridge as shown in 1A. That's what you refer to as the first bridge from the border. It is, Your Honor. And I think the reason, Your Honor, is seeing sort of different things is there was a massive amount of construction that was being done at about the time of this arrest. And 1A, as the officer Vasquez testified, was a historic photo, an aerial photo. And the rest of the photos were taken right about the time of the arrest. So that's why they look a little bit differently. But that is the same pedestrian bridge. So this border that's... There are four... You can see at least four lanes of traffic here in 1F. And there is a fence to the right-hand side of the lanes of traffic. And that's shown in the aerial photograph where... 1A? The officer Vasquez testified that the picture 1F that you were looking at starts right about here. And officer Vasquez testified that it goes all the way back to the last bridge. So this fence that we see in 1F, on the right-hand side from the lanes of traffic, where is that in 1A? In 1A? It's this, Your Honor. That's the small snippet that you see in 1F, is this area right here, right before the pedestrian bridge. I mean, I don't see a fence like that in 1A. You can... But you think that is the same area? It is. And you can sort of see it there, Your Honor. And the officer testified that that was the same fence. And the government concedes that he was talking about that fence was that fence in 1A. And why does the... Which fence we're talking about matter? I think the reason it matters is because the defendant would concede that there is absolutely an impenetrable fence that goes from the port of entry up to this first bridge. That's why... Why would he have relied on that fence? Because there are people that are known to walk sort of in through traffic here. It seemed as though the story was there was a lady that had groceries and needed to cross the border. And it almost, at first blush, seemed that he was saying that a woman came from this sort of rest area here and was trying to find a place or trying to find somebody to cross their groceries, as opposed to someplace way back away from the border. Okay. Thank you. Thank you. Would you like to take a minute for rebuttal? I just wanted to address... Just a couple of quick points. For Judge Fletcher's question about what was actually said, I think that there's no ambiguity. I think to say there's an ambiguity is a bit misleading because he says at the first bridge from the zone of Rio, that's half of the statement. And then the second half of the statement, which is ER 208, is then... He doesn't say it's the first bridge from the zone of Rio. He says the first bridge when you're coming from the zone of Rio. Right. And then at this last... And then at 208, which is the flip side of the coin, he says then at the last bridge, after he kept going, at the last bridge by the border, that's where the man, the strange man at the cap approached. So if you have somebody taking this exhibit, if you have somebody at the first bridge, and then you have somebody at the last bridge, we know what first and last mean. I mean, talk about point of reference. 208 gives you the last bridge. That's the first point I want to make. The second point I want to make is if the prosecutor is thinking that he's talking, he's telling the jury he's talking about one of these two bridges in 1A, why is he showing pictures that he just admitted were right here? If he's saying, as he just told the court, I'm talking about I thought he meant that bridge, but he just said that 1F is here, why is he showing pictures of a fence there? I think that's an important point. And really, unless there are other questions, I would submit... Well, I've got the following question. At the motion for a new trial, we do get pictures in front of the court that show a low cement or concrete barrier, which is clearly something somebody could get over. But nonetheless, it's a barrier. And maybe the argument is sufficiently serious that I should pay attention to it, that even if the story is that she came across back when there was no fence but merely a concrete barrier, that story is so improbable that even if there's error, it's harmless. What do I do? And therefore, you're not going to get a new trial. What do I do with that? Well, Your Honor, I think that the error in this case cannot be harmless because there is nothing, at least to my mind, more prejudicial than if a prosecutor tells a jury that the defense is factually impossible. And as this court has noted in multiple cases, Judge Kaczynski has written, jurors believe prosecutors. If you tell the jury it's factually impossible, that is probably the most prejudicial thing because it's going to skew the way the person with the imprimatur of the government, it's going to skew the way the jury sees everything. I mean, carrying 40 or 50 pounds of heroin or methamphetamine-laden groceries across that many lanes of traffic across that concrete fence sounds impossible to me. Well, let's look at ER 230, and I'll show you why it's absolutely plausible. 230? Yes, Your Honor. Okay. Okay. So what we see in 230 are you can see the lanes heading towards the border where Mr. Gomez was, and then on the right side you can see the all the little tiendas, all the little stores along there, right? So we can see all the little stores. I don't see any stores. I'm sorry, we're looking at 230? Yes, ER 230. ER 230? I have to say I don't see any stores. Maybe you're talking about 231? No, Your Honor. I'm talking about 230 on the far right. It looks like a bunch of hats seen up there. On the far side, on the far side of the road? Yes, Your Honor. The far side of the street. Now you're looking at this picture? Can I go? Yeah, yeah, please come up. Are we talking about the same picture? Yes. Okay. So all along there on the right side are a number of small shops. I'm sorry, that's not the right. You mean the middle? Yes, Your Honor. I'm sorry. If I'm in the lane of cars heading this way, I'm saying from the driver's right. I see, on the right-hand side of the traffic. Why don't you talk about the picture, looking at the picture? Okay, looking at the picture in the middle of the picture from the perspective farthest away from the picture taker. Is that fair? Yeah. There's a number of tiendas there, a bunch of stores along that way. I don't know that. Well, I'm looking at the number of stores and they can... I'm sorry, how do you know they're stores or what they are? Well, the merchandise that's hanging and that can be easily... But remember, she's carrying not just groceries. She's carrying stuff that is made to look like groceries, but it's full of methamphetamine, 40 pounds of weight, right? I didn't mean to interrupt, Your Honor, but there's no... But you did. I did and I apologize, but there's no concrete barrier there. That's the point. But she is carrying, that's what I said. I mean, she has to make it across. So she's carrying these bags. They're not just grocery bags, they're quite heavy. And then how does she make it past that concrete, double concrete barrier? She doesn't. That's the point. If you're coming from those tiendas, there is no concrete barrier right there. There's no concrete barrier to cross. There's no four lanes of highways. That's why those store... I mean, talking in reality again, that's why those stores are there, to service the line going into the border. I mean, that's why they're... That's their sole reason. But if she's coming from there, she's not crossing the traffic, right? Right. Exactly. Isn't that what he said, though? He said he stopped for her as he was going and she came across. The lady was going to cross. It doesn't say exactly cross what. Exactly. It doesn't quite say cross from which direction. Exactly. And the point is, the larger point is that the jury should be able to evaluate it without being told it's factually impossible, because as 230 and 231 show, it's not factually impossible. This was a short trial. It was charged as a mandatory minimum. He got 121 months as a first offender. The interest of justice, if the... I've got another question. Yes, Your Honor. When the judge denies the motion for new trial... Yes, Your Honor. ...he says there's sufficient evidence to support the verdict as a justification for that. Right. That strikes me as the wrong test. It is, in fact, the wrong test. That's a Jackson test. That's not a test as to whether or not there might have been some influence on the jury's verdict based upon the prosecutor's statement that it was factually impossible. Right. And under Hinkson and the Supreme Court's case, this Court's en banc decision, Hinkson, under Kuhn, that is an abuse of discretion, because the failure to apply the correct legal rule to the requested relief is by definition an abuse of discretion. And right. That is, as Your Honor correctly remembered, at ER 274, he says the question really is, is there substantial evidence to support the jury's verdict? Yeah. That's really not the question. And frankly, I have to tell you, my sense of the story is that it's exceedingly implausible. On the other hand, maybe he could have got the jury to buy it. And it only takes one juror. That's the... And we put that case law in our brief. It's just one. One juror hangs a jury. One... Yeah, one gullible juror. One gullible juror or one conscientious juror? Either way, one... The government still has to prove its case. I mean, it seems like there's an ambiguity here. I don't know whose burden it is to clear that ambiguity up. And maybe it's the government's, which is going to prove its case. Yes, Your Honor. And my view is, again, standing in Mr. Gomez's shoes, who's the person doing the is... He should be able to have the jury evaluate it free from misinformation. Okay, I got you. Thank you, Your Honors. Okay, thank you. Case argued, stand submitted.
judges: Kozinski, Wardlaw, Fletcher